Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

Alexandria Division

|  |  |  |
|---|---|---|
| JACQUELINE STOUT,<br>MARC STOUT | ) | Case No. **3:21-CV-654** |
| | ) | *(to be filled in by the Clerk's Office)* |
| _____ | ) | |
| *Plaintiff(s)* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| OFC. BARROW, OFC. MURPHY, OFC. WORLEY, | ) | |
| JOHN DOE1, JOHN DOE 2 | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.  Do not include addresses here.)* | | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---



RECEIVED
OCT 1 5 2021
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | JACQUELINE STOUT, MARC STOUT |
| Address | 30 WILLOW BRANCH PLACE |
| | FREDERICKSBURG — VA — 22405 |
| | *City*  *State*  *Zip Code* |
| County | STAFFORD |
| Telephone Number | (540) 370-6980 |
| E-Mail Address | FORMULAFOCUSED@GMAIL.COM |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | OFC. BARROW |
| Job or Title *(if known)* | POLICE OFFICER |
| Address | 2200 COWAN BLVD. |
| | FREDERICKSBURG — VA — 22401 |
| | *City*  *State*  *Zip Code* |
| County | SPOTSYLVANIA |
| Telephone Number | (540) 373-3122 |
| E-Mail Address *(if known)* | |

☑ Individual capacity   ☐ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | OFC. MURPHY |
| Job or Title *(if known)* | POLICE OFFICER |
| Address | 2200 COWAN BLVD. |
| | FREDERICKSBURG — VA — 22401 |
| | *City*  *State*  *Zip Code* |
| County | SPOTSYLVANIA |
| Telephone Number | (540) 373-3122 |
| E-Mail Address *(if known)* | |

☑ Individual capacity   ☐ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3

| | |
|---|---|
| Name | OFC. WORLEY |
| Job or Title *(if known)* | POLICE OFFICER |
| Address | 2200 COWAN BLVD. |

| | | |
|---|---|---|
| FREDERICKSBURG | VA | 22401 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | SPOTSYLVANIA |
| Telephone Number | (540) 373-3122 |
| E-Mail Address *(if known)* | |

☑ Individual capacity   ☐ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | SEE ATTACHED "STATEMENT OF DEFENDANTS I. B." |
| Job or Title *(if known)* | |
| Address | |

| | | |
|---|---|---|
| | | |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity   ☐ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

FIRST AMENDMENT; FOURTH AMENDMENT

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.
THE DEFENDANTS WERE, AT ALL TIMES MATERIAL, CITY OF FREDERICKSBURG POLICE
OFFICERS AND ACTED IN CAPACITIES AS SUCH.

## III.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?
FREDERICKSBURG, VA 22401

B.   What date and approximate time did the events giving rise to your claim(s) occur?
MAY 31, 2021, DAYTIME; JUNE 1, 2021, NIGHTTIME

C.   What are the facts underlying your claim(s)?  *(For example: What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
SEE ATTACHED "STATEMENT OF CLAIM III. C."; SEE ATTACHED "CAUSES OF ACTION."

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

The defendants subjected Jacqueline Stout and Marc Stout to the crushing weight and burden of the criminal justice system, every day, for, respectively, 3 months, and 1 month, the length of time between when Jacqueline Stout and Marc Stout were arrested, and when, respectively, Jacqueline Stout and Marc Stout were found not-guilty at their trials. The defendants subjected Jacqueline Stout and Marc Stout to the daily dread and horror of the possibility of a one-year jail sentence and/or steep fine, every day, for, respectively, 3 months, and 1 month. And that, regarding each claim.

The defendants caused Jacqueline Stout and Marc Stout the loss of dignity, loss of privacy, and loss of status, caused Jacqueline Stout and Marc Stout to be subjected to mental and emotional anguish, and caused Jacqueline Stout and Marc Stout to be subjected to fear and anxiety, regarding each claim.

## V.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

GENERAL COMPENSATORY DAMAGES IN THE AMOUNT OF AT LEAST $50,000 REGARDING EACH CLAIM AGAINST EACH DEFENDANT;

PUNITIVE DAMAGES IN THE AMOUNT OF AT LEAST $50,000 REGARDING EACH CLAIM AGAINST EACH DEFENDANT;

COSTS OF LITIGATION;

OTHER AMOUNTS THE COURT DEEMS JUST.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          10/07/2021

Signature of Plaintiff

Printed Name of Plaintiff          JACQUELINE STOUT, MARC STOUT

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number

E-mail Address

## STATEMENT OF ADDITIONAL DEFENDANTS I. B.

JOHN DOE 1
TITLE: POLICE OFFICER
2200 COWAN BLVD.
FREDERICKSBURG, VA 22401
COUNTY: SPOTSYLVANIA
PHONE: (540) 373-3122
INDIVIDUAL CAPACITY

JOHN DOE 2
TITLE: POLICE OFFICER
2200 COWAN BLVD.
FREDERICKSBURG, VA 22401
COUNTY: SPOTSYLVANIA
PHONE: (540) 373-3122
INDIVIDUAL CAPACITY

## STATEMENT OF CLAIM III. C.

1.  The facts of this case arise out of the national George Floyd and Breonna Taylor protests of Summer 2020. Jacqueline Stout is a protester, advocate for people of color, and a civil- and womens'-rights activist.

2.  The facts of this case occurred after two very material events. One, on May 31, 2020, Jacqueline Stout, her brother Marc Stout, and hundreds of other protesters were attacked by the Fredericksburg Police Department and Fredericksburg Sheriff's Department with tear-gas, pepper-spray, rubber bullets, and sting-ball grenades for protesting and for assembling. Protesters, not including Jacqueline Stout, were arrested in the following weeks for their protest-related conduct and speech. Those events are now the subject of civil-rights litigation.[1] Two, Jacqueline Stout was arrested for filming her brother's arrest at the courthouse on the day of the arrested protesters' trials. The arrested protesters were

---

[1] *Stout, et. al., v. Baroody*, 3:21-cv-00476; *Banks, et. al., v. City of Fredericksburg*, 3:2021-cv-00065.

found not-guilty at their trials. Jacqueline Stout was later found not-guilty at her trial and sued. Jacqueline Stout can no longer expound on the outcome of the civil litigation.

3. On May 31, 2021, during daylight, Jacqueline Stout, and dozens of other protestors, including Jacqueline Stout's brother, Marc Stout, marched on the sidewalks and in the streets of downtown Fredericksburg. Jacqueline Stout was on rollerblades at all times material. The protesters, including Jacqueline Stout, waived signs containing language against police violence, racism, and the doctrine of qualified immunity. The protesters, including Jacqueline Stout, yelled out the names of the victims of police violence and vocalized sharp criticisms about the institution of law-enforcement. May 31, 2021, was the one-year mark since the protesters were attacked with tear-gas, pepper-spray, rubber bullets, and sting-ball grenades out front of the Fredericksburg courthouse during the height of the George Floyd and Breonna Taylor protests.

4. Police officers in their police vehicles trailed the protesters and drove alongside the protesters.

5. Defendant Barrow and the other police officers became overwhelmed by the protesters' criticisms towards and about the police. Defendant Barrow and the other police officers became overwhelmed by a handful of 911 calls from city residents complaining about the protesters' message against police violence against people of color, racism, and the doctrine of qualified immunity. An elderly white woman yelled to a police officer about the protesters as the elderly white woman was being assisted by a black man, "They're not even black!"

6. Defendant Barrow and the other police officers became overwhelmed by their perceptions that the protesters were being perceived by the public as a larger presence

and stronger force than the police, thereby undermining Defendant Barrow's and the other officers' desired effect that Defendant Barrow and the other officers wanted the image of law-enforcement to achieve on the public.

7. Defendant Barrow and the other police officers communicated to John Doe 1, a police supervisor, that they wanted to break up the assembly and suppress the protesters' message and expressions from public view.

8. John Doe 1 affirmatively communicated to Defendant Barrow and the other police officers to "trap the protesters when they go down the hill and get them charged with crimes." The "hill" in reference is a stretch of William Street between College Avenue and Sunken Road. The hill is steep, long, and dangerous, and does not connect to any intersecting or side streets from top to bottom.

9. Many of the protesters were on skateboards, rollerskates, rollerblades, and bicycles.

10. The protesters approached the deck of the hill and began their way down the slope. Some of the protesters, including Jacqueline Stout, who were on skateboards, rollerskates, rollerblades, and bicycles, quickly developed momentum and speed.

11. Some police vehicles continued to trail the protesters and drive alongside them. Other police vehicles bursted past the protesters, including the protesters on wheels sporting down the hill, to get far enough ahead of the protesters to, effectually, timely barricade the roadway and sidewalks before the protesters could reach an intersection or side street at the bottom of the hill and escape the funnel.

12. Officer Barrow, in her police vehicle, bursted narrowly past Jacqueline Stout to get just ahead of Jacqueline Stout as Jacqueline Stout sailed downhill on rollerblades. Officer

Barrow slammed on her brakes as she t-parked her police vehicle across the double-yellow, three-lane, 25 m.p.h. road to form a barricade.

13. Officer Barrow sprung from her police vehicle and leaped, spread-eagle, directly into Jacqueline Stout's oncoming path of travel, establishing splits of a second in distance between the two. Officer Barrow braced herself as a "human-X" and shouted, "Hey, hey, hey!"

14. Jacqueline Stout, with splits of a second to make a decision, and instinctively recognizing Officer Barrow's attempt to ambush Jacqueline Stout into a felony assault on law-enforcement indictment,[2] "juked" Officer Barrow twice, causing Officer Barrow to side-step one way, then another, before Jacqueline Stout performed a "crossover" past Officer Barrow.

15. Jacqueline Stout whizzed past the other police officers, who were themselves occupied with detaining or arresting other protesters, and past the other police vehicles. Jacqueline Stout forthwith disappeared.

16. Police units set up a perimeter and began searching for Jacqueline Stout in broad daylight. Police units frantically circled the immediate blocks and area and attempted to question protesters as to the whereabouts of Jacqueline Stout. The police were unable to locate Jacqueline Stout or obtain any information from any of the protesters.

17. Defendant Barrow later went to John Doe 2, a police supervisor, with her body camera footage of the events of May 31, 2021, and stated to John Doe 2 that Defendant Barrow wanted to charge Jacqueline Stout with obstruction of justice and impeding a pedestrian. John Doe 2 viewed Defendant Barrow's body camera footage and affirmatively

---

[2] Robert Stout, Jacqueline Stout's brother, was, at the time, recently ambushed by police into an assault on law-enforcement charge and was found not-guilty at his jury trial.

sanctioned Defendant Barrow's decision. Defendant Barrow had arrest warrants issued for Jacqueline Stout for obstruction and impeding.

18. On June 1, 2021, two Spotsylvania County deputies entered Jacqueline Stout's place of employment asking employees if Jacqueline Stout was working. The employees called Jacqueline Stout, who was not working, and informed her that deputies were looking for her.

19. Jacqueline Stout, suspicious, called the Fredericksburg Police Department and asked the desk officer if Jacqueline Stout had any outstanding warrants, and stated that if Jacqueline Stout did, that Jacqueline Stout would come to the police station and turn herself in. The desk officer stated to Jacqueline Stout that Jacqueline Stout did not have any outstanding warrants. Jacqueline Stout did, in fact, at the time, have outstanding warrants for obstruction and impeding. The desk officer lied to Jacqueline Stout so that Jacqueline Stout could not turn herself in and so that Jacqueline Stout would be arrested with maximum dramatic effect in public.

20. On the night of the date that the Spotsylvania County deputies visited Jacqueline Stout's place of employment, Jacqueline Stout, her brother, Marc Stout, who was, at all times material, riding his bicycle, and dozens of other protesters on skateboards, rollerskates, rollerblades, and bicycles, calmly and peacefully strolled through the downtown Fredericksburg streets,[3] serenely conversing amongst themselves and reflecting on the events of the past year.

---

[3] Skateboard, rollerskate, rollerblade, and bicycle ordinances are not enforced in Fredericksburg because those methods of transportation are so popular and common. The residents of the City are young and hip, and the City is a college town of University of Mary Washington students.

21.   Jacqueline Stout and the other protesters made their way towards some of the downtown residential neighborhoods and away from the businesses. Jacqueline Stout and the other protesters turned off onto a dark, narrow, quiet street.

22.   Police vehicles with their emergency lights activated swept in from behind the protesters. Some of the police vehicles narrowly raced past the protesters on a one-lane, two-way road to break ahead of the protesters and parallel-park along the north side of the street in front of the protesters. Jacqueline Stout, Marc Stout, and the other protesters began protesting and expressing criticisms towards and about the police, and about the institution of law-enforcement.

23.   Some of the protesters, not including Jacqueline Stout, began passing the parallel-parked police vehicles. Some of the protesters stopped on the sidewalks, or moved to the side of the road from out of it, and stopped.

24.   When Marc Stout biked past one of the leading police vehicles, Defendant Murphy leaped out of it and commanded Marc Stout, who was bicycling on the sidewalk, to stop and to not move. Marc Stout stopped, straddled his bicycle, and asked Officer Murphy if Marc Stout was being detained. Defendant Murphy responded to Marc Stout that Marc Stout was being detained. Marc Stout commanded Defendant Murphy to provide Marc Stout with the reasonable suspicion to detain or probable cause to arrest Marc Stout. Defendant Murphy responded to Marc Stout, "We'll get to that in a minute."

25.   Marc Stout, puzzled, then witnessed Defendant Murphy strangely take up a tactical crouch position up against Defendant Murphy's driver's side wheel well, keeping Defendant Murphy's vehicle angled between himself and Marc Stout, who was still straddling his bicycle on the sidewalk. At this point, Marc Stout didn't know whether to

laugh at, or run from, Defendant Murphy's circumspect behavior. Defendant Murphy remained in his position for a few seconds while Marc Stout stared at Defendant Murphy as Defendant Murphy peeked out over the hood of Defendant Murphy's vehicle.

26.  Jacqueline Stout, unexpectedly, jetted past Marc Stout on the sidewalk on rollerblades. Marc Stout stated to Defendant Murphy, "I'm leaving on my bicycle and I'm leaving in the direction of away from you. Cite it or bite it, I don't have time for this. This is an unreasonably prolonged detention." Defendant Murphy firmly responded to Marc Stout to not move. Marc Stout froze.

27.  Defendant Murphy sprung from behind his vehicle and combat-crouch-sprinted past Marc Stout and in the direction of Jacqueline Stout's turned back, knifing his hands and arms through the air in dramatic fashion as he gave chase after an unknowing woman on rollerblades.

28.  Jacqueline Stout, unknowingly with Defendant Murphy on Jacqueline Stout's six, reached the next street corner and almost collided with one or more police vehicles that, from out of nowhere, converged on and braked in front of Jacqueline Stout's path of travel. Jacqueline Stout slammed on her rollerbrakes, enabling Defendant Murphy to close distance and finally reach Jacqueline Stout.

29.  Defendant Murphy sprinted past Jacqueline Stout, stepped into her path of travel, turned to face her, and braced as Jacqueline Stout collided into him, yelling to Jacqueline Stout that she had outstanding warrants and was under arrest. Defendant Murphy grabbed Jacqueline Stout by her arms. Defendant Murphy and the other half-dozen police officers subdued Jacqueline Stout to the ground. Defendant Murphy and the other police officers

contemptuously removed Jacqueline Stout's rollerblades and excitedly handcuffed Jacqueline Stout's wrists behind her back.

30. Defendant Murphy, at all times material, knew that Defendant Barrow issued arrest warrants against Jacqueline Stout in response to Jacqueline Stout's criticisms about police officers and Jacqueline Stout's dismissive rollerblade expressions towards police officers, including Defendant Barrow.

31. Sgt. Worley arrived on scene and accosted Marc Stout, who was still straddling his bicycle on the sidewalk next to Defendant Murphy's vehicle. Marc Stout stated to Sgt. Worley, "I'm being detained right now, sir. I don't know if you knew that, but I'm attempting to voluntarily cooperate." Sgt. Worley shouted to Marc Stout, "Well, if you're being detained, get the f*** off the bike!" Marc Stout hopped off of his bike. Sgt. Worley grabbed Marc Stout's bike and threw it to the ground. Sgt. Worley shouted to Marc Stout, "What are you being detained for?!" Marc Stout responded to Defendant Worley that Marc Stout wasn't sure. Sgt. Worley shouted to Marc Stout, "Sit on the curb!" Marc Stout sat on the curb. Sgt. Worley shouted to Marc Stout, "Nobody wants to hear what y'all are out here saying! Do you think people on the rooftop lounges want to hear that stuff that y'all are out here saying?!"

32. Some of the protesters circled the scene on bicycles and expressed criticisms towards and about the police, and about the institution of law-enforcement. Police officers, overwhelmed by the criticisms, charged towards some of the protesters circling the scene in efforts to physically grab the protesters. The police were unsuccessful in their attempts.

33. Defendant Murphy approached Marc Stout and demanded that Marc Stout provide Defendant Murphy with Marc Stout's identification so that Defendant Murphy could

issue citations to Marc Stout. Marc Stout responded to Defendant Murphy, "You're not getting I.D. because I know for a fact that you don't have probable cause to cite me. You're retaliating against us for assembling and for protesting." Another officer was able to ultimately provide Defendant Murphy with Marc Stout's identifying information. Defendant Murphy cited Marc Stout for riding rollerblades[4] downtown that night, and for impeding traffic on a bicycle that night. Marc Stout was later found not-guilty of both offenses at trial. Both charges stemmed from Marc Stout lawfully riding his bike in the roadway that night.

34.     Jacqueline Stout was transported to the magistrate where Jacqueline Stout was booked for obstruction of justice and impeding a pedestrian, and released on bond. The two charges stemmed from Jacqueline Stout not "stopping for" Officer Barrow on May 31, 2021.

35.     Defendant Edward O' Shay, the Commonwealth Attorney for the City of Fredericksburg, prosecuted Jacqueline Stout for obstruction of justice on September 16, 2021. Defendant Edward O'Shay reviewed Defendant Barrow's body camera footage in preparation for trial. There is no way that Defendant Edward O'Shay walked away from viewing that footage with a good faith belief that Jacqueline Stout obstructed Defendant Barrow. Furthermore, the Commonwealth Attorney's office for Fredericksburg has a standing policy of trying all protest-related cases, even the most frivolous cases that clearly have no merit. Out of the over 100 protest-related cases that the C.A.'s office has prosecuted since the beginning of the protests in Summer 2020, the C.A.'s office hasn't dropped or dismissed one case, but has tried every single case, and every single case has resulted in a not-guilty verdict.

---

[4] City of Fredericksburg Ordinance §58-15. Marc Stout, at all times material, was riding a bicycle, and was never on rollerblades.

36.     Jacqueline Stout was found not-guilty of obstruction of justice at trial.

37.     Jacqueline Stout and Marc Stout were, at all times material, fully masked. Defendant
        Barrow, or any other police officer, could not identify that the person who juked
        Defendant Barrow was Jacqueline Stout. Defendant Murphy, or any other police officer,
        could not identify that the person who Defendant Murphy cited for riding rollerblades
        and impeding traffic was Marc Stout.

## CAUSES OF ACTION

### Jacqueline Stout's Causes of Action Against Defendant Barrow

#### Claim 1 - First Amendment/ Freedom of Speech Retaliation

Claim 1 is Jacqueline Stout's First Amendment freedom of speech retaliation claim against Defendant Barrow in her individual capacity. Defendant Barrow, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's criticisms on May 31, 2021, towards and about Defendant Barrow, and other police officers, were, at all times material, protected by the First Amendment right to freedom of speech. Defendant Barrow's arrest warrants issued against Jacqueline Stout chilled Jacqueline Stout's First Amendment right to freedom of speech. Jacqueline Stout's, and the other protesters', criticisms towards and about the police, and about the institution of law-enforcement, caused Defendant Barrow to issue arrest warrants against Jacqueline Stout. Defendant Barrow, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

#### Claim 2 - First Amendment/ Freedom of Expression Retaliation

Claim 2 is Jacqueline Stout's First Amendment freedom of expression retaliation claim against Defendant Barrow in her individual capacity. Defendant Barrow, at all times material,

knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's juke expression to Defendant Barrow to avoid police contact on May 31, 2021, was, at all times material, protected by the First Amendment right to freedom of expression. Defendant Barrow's arrest warrants issued against Jacqueline Stout chilled Jacqueline Stout's First Amendment right to freedom of expression. That Jacqueline Stout juked Defendant Barrow caused Defendant Barrow to issue arrest warrants against Jacqueline Stout. Defendant Barrow, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 3 – First Amendment/ Freedom of Assembly Retaliation

Claim 3 is Jacqueline Stout's First Amendment freedom of assembly retaliation claim against Defendant Barrow in her individual capacity. Defendant Barrow, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's peaceful assemblage with other protesters on May 31, 2021, was protected by the First Amendment right to freedom of assembly. Defendant Barrow's arrest warrants issued against Jacqueline Stout chilled Jacqueline Stout's First Amendment right to freedom of assembly. Jacqueline Stout's peaceful assemblage caused Defendant Barrow to issue arrest warrants against Jacqueline Stout. Defendant Barrow, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 4 – Fourth Amendment/ Arrest w/o Probable Cause

Claim 4 is Jacqueline Stout's Fourth Amendment arrest without probable cause claim against Defendant Barrow in her individual capacity. Defendant Barrow did not possess probable cause that Jacqueline Stout was the individual who juked Defendant Barrow. Defendant Barrow did not otherwise possess probable cause that Jacqueline Stout obstructed or impeded Defendant

Barrow. Defendant Barrow, or any other police officer, at all times material, did not possess probable cause to arrest Jacqueline Stout for any crime.

### Claim 5 - Fourth Amendment/ Malicious Prosecution

Claim 5 is Jacqueline Stout's Fourth Amendment malicious prosecution claim against Defendant Barrow in her individual capacity. Defendant Barrow initiated a criminal proceeding against Jacqueline Stout. The criminal proceeding that Defendant Barrow initiated against Jacqueline Stout was terminated in Jacqueline Stout's favor. Defendant Barrow did not possess probable cause to support the criminal proceeding that she initiated against Jacqueline Stout. Defendant Barrow acted with malice.

### Jacqueline Stout's Causes of Action Against Defendant Edward O'Shay

### Claim 6 - Fourth Amendment/ Malicious Prosecution

Claim 6 is Jacqueline Stout's Fourth Amendment malicious prosecution claim against Defendant Edward O'Shay in his individual capacity. Defendant Edward O'Shay maintained a criminal proceeding against Jacqueline Stout. The criminal proceeding that Defendant Edward O'Shay maintained against Jacqueline Stout was terminated in Jacqueline Stout's favor. Defendant Edward O'Shay did not possess probable cause to support the criminal proceeding that he maintained against Jacqueline Stout. Defendant Edward O'Shay acted with malice.

### Jacqueline Stout's Causes of Action Against Defendant Murphy

### Claim 7 - First Amendment/ Freedom of Speech Retaliation

Claim 7 is Jacqueline Stout's First Amendment freedom of speech retaliation claim against Defendant Murphy in his individual capacity. Defendant Murphy, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's criticisms on May 31, 2021, towards and about Defendant Barrow and other police officers,

were, at all times material, protected by the First Amendment right to freedom of speech. Jacqueline Stout's criticisms on June 1, 2021, towards and about Defendant Murphy and other police officers, were, at all times material, protected by the First Amendment right to freedom of speech. Defendant Murphy, at times material, knew of the facts and circumstances of Jacqueline Stout's warrants. Defendant Murphy chilled Jacqueline Stout's First Amendment right to freedom of speech by arresting Jacqueline Stout. Jacqueline Stout's, and the other protesters', criticisms towards and about the police, and about the institution of law-enforcement, caused Defendant Murphy to arrest Jacqueline Stout. Defendant Murphy, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 8 - First Amendment/ Freedom of Expression Retaliation

Claim 8 is Jacqueline Stout's First Amendment freedom of expression retaliation claim against Defendant Murphy in his individual capacity. Defendant Murphy, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's juke expression to Defendant Barrow to avoid police contact on May 31, 2021, was, at all times material, protected by the First Amendment right to freedom of expression. Defendant Murphy, at all times material, knew of the facts and circumstances of Jacqueline Stout's warrants. Defendant Murphy chilled Jacqueline Stout's First Amendment right to freedom of expression by arresting Jacqueline Stout. That Jacqueline Stout juked Defendant Barrow caused Defendant Murphy to arrest Jacqueline Stout. Defendant Barrow, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 9 - First Amendment/ Freedom of Assembly Retaliation

Claim 9 is Jacqueline Stout's First Amendment freedom of assembly retaliation claim against Defendant Murphy in his individual capacity. Defendant Murphy, at all times material,

knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's peaceful assemblage with other protesters on May 31, 2021, was protected by the First Amendment right to freedom of assembly. Jacqueline Stout's peaceful assemblage with other protesters on June 1, 2021, was protected by the First Amendment right to freedom of assembly. Defendant Murphy chilled Jacqueline Stout's First Amendment right to freedom of assembly by arresting Jacqueline Stout. Jacqueline Stout's peaceful assemblage caused Defendant Murphy to arrest Jacqueline Stout. Defendant Murphy, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 10 - Fourth Amendment/ Arrest w/o Probable Cause

Claim 10 is Jacqueline Stout's Fourth Amendment arrest without probable cause claim against Defendant Murphy in his individual capacity. Defendant Murphy did not possess probable cause that the individual who Defendant Murphy arrested on June 1, 2021, for outstanding warrants was Jacqueline Stout. Defendant Murphy, at all times material, knew of the facts and circumstances of Jacqueline Stout's warrants, therefore, Defendant Murphy did not otherwise possess probable cause to arrest Jacqueline Stout, or probable cause that Jacqueline Stout obstructed or impeded. Defendant Murphy, or any other police officer, at all times material, did not possess probable cause to arrest Jacqueline Stout for any crime.

### Jacqueline Stout's Causes of Action Against Defendant John Doe 1

### Claim 11 - First Amendment/ Freedom of Speech Retaliation

Claim 11 is Jacqueline Stout's First Amendment freedom of speech retaliation claim against Defendant John Doe 1 in his/her individual capacity. Defendant John Doe 1, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's, and the other protesters', criticisms on May 31, 2021, towards and about police officers,

were protected by the First Amendment right to freedom of speech. Defendant John Doe 1's affirmative communication to police officers to "trap the protesters on the hill and get them charged with crimes" chilled Jacqueline Stout's First Amendment right to freedom of speech. Jacqueline Stout's, and the other protesters', criticisms towards and about the police, and about the institution of law-enforcement, caused Defendant John Doe 1 to affirmatively communicate to police officers to trap the protesters and charge them. Defendant John Doe 1, or any other police officer, at all times material, did not possess probable cause to arrest Jacqueline Stout for any crime.

### Claim 12 - First Amendment/ Freedom of Assembly Retaliation

Claim 12 is Jacqueline Stout's First Amendment freedom of assembly retaliation claim against Defendant John Doe 1 in his/her individual capacity. Defendant John Doe 1, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's peaceful assemblage with other protesters on May 31, 2021, was protected by the First Amendment right to freedom of assembly. Defendant John Doe 1's affirmative communication to police officers to "trap the protesters on the hill and get them charged with crimes" chilled Jacqueline Stout's First Amendment right to freedom of assembly. Jacqueline Stout's peaceful assemblage caused Defendant John Doe 1 to affirmatively communicate to police officers to trap the protesters and get them charged. Defendant John Doe 1, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 13 - Fourth Amendment/ Arrest w/o Probable Cause

Claim 13 is Jacqueline Stout's Fourth Amendment arrest without probable cause claim against Defendant John Doe 1 in his/her individual capacity. Defendant John Doe 1 did not possess probable cause to affirmatively communicate to police officers to "trap the protesters

when they go down the hill and get them charged with crimes." Defendant John Doe 1, or any other police officer, at all times material, did not possess probable cause to charge Jacqueline Stout for any crime.

### Claim 14 - Fourth Amendment/ Malicious Prosecution

Claim 14 is Jacqueline Stout's Fourth Amendment malicious prosecution claim against Defendant John Doe 1 in his/her individual capacity. Defendant John Doe 1 instituted a criminal proceeding against Jacqueline Stout by affirmatively communicating to police officers to "trap the protesters when they go down the hill and get them charged with crimes." The criminal proceeding that Defendant John Doe 1 instituted against Jacqueline Stout was terminated in Jacqueline Stout's favor. Defendant John Doe 1 did not possess probable cause to support the criminal proceeding that he/she instituted against Jacqueline Stout. Defendant John Doe 1 acted with malice.

### Jacqueline Stout's Causes of Action Against Defendant John Doe 2

### Claim 15 - First Amendment/ Freedom of Speech Retaliation

Claim 15 is Jacqueline Stout's First Amendment freedom of speech retaliation claim against Defendant John Doe 2 in his/her individual capacity. Defendant John Doe 2, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's criticisms on May 31, 2021 towards and about Defendant Barrow and other police officers were, at all times material, protected by the First Amendment right to freedom of speech. Defendant John Doe 2's affirmative sanctioning of Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout chilled Jacqueline Stout's First Amendment right to freedom of speech. Jacqueline Stout's, and the other protesters', criticisms towards and about the police and about the institution of law-enforcement caused Defendant John Doe 1's affirmative

sanctioning of Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout. Defendant John Doe 2, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 16 - First Amendment/ Freedom of Expression Retaliation

Claim 16 is Jacqueline Stout's First Amendment freedom of expression retaliation claim against Defendant John Doe 2 in his/her individual capacity. Defendant John Doe 2, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's juke expression to Defendant Barrow to avoid police contact on May 31, 2021, was, at all times material, protected by the First Amendment right to freedom of expression. Defendant John Doe 2's affirmative sanctioning of Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout chilled Jacqueline Stout's First Amendment right to freedom of expression. That Jacqueline Stout juked Defendant Barrow caused Defendant John Doe 2 to affirmatively sanction Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout. Defendant John Doe 2, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 17 - First Amendment/ Freedom of Assembly Retaliation

Claim 17 is Jacqueline Stout's First Amendment freedom of assembly retaliation claim against Defendant John Doe 2 in his/her individual capacity. Defendant John Doe 2, at all times material, knew that Jacqueline Stout was engaged in First Amendment activity. Jacqueline Stout's peaceful assemblage with other protesters on May 31, 2021 was protected by the First Amendment right to freedom of assembly. Defendant John Doe 2's affirmative sanctioning of Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout chilled Jacqueline Stout's First Amendment right to freedom of assembly. Jacqueline Stout's peaceful

assemblage caused Defendant John Doe 2 to affirmatively sanction Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout. Defendant John Doe 2, or any other police officer, at all times material, did not have probable cause to arrest Jacqueline Stout for any crime.

### Claim 18 - Fourth Amendment/ Arrest w/o Probable Cause

Claim 18 is Jacqueline Stout's Fourth Amendment arrest without probable cause claim against Defendant John Doe 2 in his/her individual capacity. Defendant John Doe 2 did not possess probable cause that Jacqueline Stout was the individual who juked Defendant Barrow. Defendant John Doe 2 did not otherwise possess probable cause that Jacqueline Stout obstructed or impeded Defendant Barrow. Defendant John Doe 2, or any other police officer, at all times material, did not possess probable cause to arrest Jacqueline Stout for any crime.

### Claim 19 - Fourth Amendment/ Malicious Prosecution

Claim 19 is Jacqueline Stout's Fourth Amendment malicious prosecution claim against Defendant John Doe 2 in his/her individual capacity. Defendant John Doe 2 instituted a criminal proceeding against Jacqueline Stout by affirmatively sanctioning Defendant Barrow's decision to have arrest warrants issued against Jacqueline Stout. The criminal proceeding that Defendant John Doe 2 instituted against Jacqueline Stout was terminated in Jacqueline Stout's favor. Defendant John Doe 2 did not possess probable cause to support the criminal proceeding that he/she instituted against Jacqueline Stout. Defendant John Doe 2 acted with malice.

### Marc Stout's Causes of Action Against Defendant Murphy

### Claim 20 - First Amendment/ Freedom of Speech Retaliation

Claim 20 is Marc Stout's First Amendment freedom of speech retaliation claim against Defendant Murphy in his individual capacity. Defendant Murphy, at all times material, knew that

Marc Stout was engaged in First Amendment activity. Marc Stout's criticisms on June 1, 2021, towards and about Defendant Murphy and other police officers, were, at all times material, protected by the First Amendment right to freedom of speech. Defendant Murphy chilled Marc Stout's First Amendment right to freedom of speech by citing and releasing Marc Stout. Marc Stout's, and the other protesters', criticisms towards and about the police, and about the institution of law-enforcement, caused Defendant Murphy to cite and release Marc Stout. Defendant Murphy, or any other police officer, at all times material, did not have probable cause to arrest Marc Stout for any crime.

### Claim 21 - First Amendment/ Freedom of Assembly Retaliation

Claim 21 is Marc Stout's First Amendment freedom of assembly retaliation claim against Defendant Murphy in his individual capacity. Defendant Murphy, at all times material, knew that Marc Stout was engaged in First Amendment activity. Marc Stout's peaceful assemblage with other protesters on June 1, 2021, was protected by the First Amendment right to freedom of assembly. Defendant Murphy chilled Marc Stout's First Amendment right to freedom of assembly by citing and releasing Marc Stout. Marc Stout's peaceful assemblage caused Defendant Murphy to cite and release Marc Stout. Defendant Murphy, or any other police officer, at all times material, did not have probable cause to arrest Marc Stout for any crime.

### Claim 22 - Fourth Amendment/ Arrest w/o Probable Cause

Claim 22 is Marc Stout's Fourth Amendment arrest without probable cause claim against Defendant Murphy in his individual capacity. Defendant Murphy did not possess probable cause that the individual who Defendant Murphy cited and released was Marc Stout. Defendant Murphy did not otherwise possess probable cause to cite and release Marc Stout for riding

rollerblades and impeding traffic. Defendant Murphy, or any other police officer, at all times material, did not possess probable cause to arrest Marc Stout for any crime.

### Claim 23 - Fourth Amendment/ Malicious Prosecution

Claim 23 is Marc Stout's Fourth Amendment malicious prosecution claim against Defendant Murphy in his individual capacity. Defendant Murphy instituted a criminal proceeding against Marc Stout. The criminal proceeding that Defendant Murphy instituted against Marc Stout was terminated in Marc Stout's favor. Defendant Murphy did not possess probable cause to support the criminal proceeding that Defendant Murphy instituted against Marc Stout. Defendant Murphy acted with malice.

### Marc Stout's Causes of Action Against Defendant Worley

### Claim 24 - First Amendment/ Freedom of Speech Retaliation

Claim 24 is Marc Stout's First Amendment freedom of speech retaliation claim against Defendant Worley in his individual capacity. Defendant Worley, at all times material, knew that Marc Stout was engaged in First Amendment activity. Marc Stout's criticisms on June 1, 2021, towards and about Defendant Worley and other police officers, were, at all times material, protected by the First Amendment right to freedom of speech. Defendant Worley chilled Marc Stout's First Amendment right to freedom of speech by detaining Marc Stout. Marc Stout's, and the other protesters', criticisms towards and about the police, and about the institution of law-enforcement, caused Defendant Worley to detain Marc Stout. Defendant Worley, or any other police officer, at all times material, did not have reasonable suspicion to detain Marc Stout for any criminal activity.

### Claim 25 - First Amendment/ Freedom of Assembly Retaliation

Claim 25 is Marc Stout's First Amendment freedom of assembly retaliation claim against Defendant Worley in his individual capacity. Defendant Worley, at all times material, knew that Marc Stout was engaged in First Amendment activity. Marc Stout's peaceful assemblage with other protesters on June 1, 2021, was protected by the First Amendment right to freedom of assembly. Defendant Worley chilled Marc Stout's First Amendment right to freedom of assembly by detaining Marc Stout. Marc Stout's peaceful assemblage caused Defendant Worley to detain Marc Stout. Defendant Worley, or any other police officer, at all times material, did not have reasonable suspicion to detain Marc Stout for any criminal activity.

### Claim 26 - Fourth Amendment/ Detained w/o Reasonable Suspicion

Claim 26 is Marc Stout's Fourth Amendment detained without reasonable suspicion claim against Defendant Worley in his individual capacity. Defendant Worley did not possess reasonable suspicion to detain Marc Stout. Defendant Worley, or any other police officer, at all times material, did not possess reasonable suspicion to detain Marc Stout for any criminal activity.

Assuming that Marc Stout's custody status, for purposes of this claim, was an arrest, and that Defendant Worley participated in an arrest and not a detention, Defendant Worley did not possess probable cause, nor did any other police officer.