IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JACQUELINE STOUT &
MARC STOUT,
        Plaintiffs,

v.                                                                                    Civil Action No. 3:21cv654

OFC. BARROW, et al.,
        Defendants.

## OPINION

On May 31 and June 1, 2021, Jacqueline and Marc Stout ("the Stouts") peacefully protested police brutality in downtown Fredericksburg. The Stouts claim that during these protests the defendants, Officers Barrow, Murphy, and Worley, pretextually charged them with minor crimes to silence their criticisms of law enforcement.[1] The Stouts challenged these charges in court and obtained acquittals on all but one charge.

The Stouts now sue the defendants pursuant to 42 U.S.C. § 1983 for violating their First and Fourth Amendment rights. The defendants move to dismiss the Stouts' claims because probable cause supported the charges.[2] The Court agrees that Jacqueline's claims against the defendants fail because probable cause existed for her arrest and because Officer Murphy arrested her pursuant to a facially valid warrant issued by a magistrate judge. The Court also finds that Marc's malicious prosecution claim against Officer Murphy fails because he has not shown causation. But the Court will deny the defendants' motion to dismiss Marc's Fourth Amendment

---

[1] The Stouts also bring claims against Edward O'Shay, Assistant Commonwealth Attorney for the City of Fredericksburg, and two unnamed police supervisors.

[2] The defendants' motion to dismiss includes the required notice under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam). (ECF No. 7.)

unreasonable seizure claims against the defendants because Marc alleges that they detained him without an objective basis for suspecting him of criminal activity. The Court will also deny their motion to dismiss his First Amendment retaliation claim because Marc plausibly states a claim for relief.

## I. FACTS ALLEGED IN THE COMPLAINT

On May 31, 2021, dozens of individuals—including the Stouts—protested police violence in downtown Fredericksburg. (ECF No. 3 ¶ 3.) Many of the protesters used skateboards, roller skates, rollerblades, and bicycles while law enforcement followed in their police vehicles. (*Id.* ¶¶ 4, 9.) After law enforcement officers "became overwhelmed by the protesters' criticisms," Officer Barrow and his colleagues asked a police supervisor for permission to break up the protest. (*Id.* ¶¶ 5, 7.) The supervisor instructed the officers to "trap the protesters when they go down the hill"—a "steep, long, and dangerous" stretch of road—"and get them charged with crimes." (*Id.* ¶ 8.) Officer Barrow sped to the front of the protest and blocked the protesters' path with her car. (*Id.* ¶¶ 11–12.) She then got out of her car, placed herself in Jacqueline's path, and shouted, "Hey, hey, hey!" (*Id.* ¶ 13.) Jacqueline, who wore rollerblades, avoided contact with Officer Barrow by "juk[ing]" her twice and "causing [her] to side-step one way, then another." (*Id.* ¶ 14.) Jacqueline then "performed a 'crossover' past Officer Barrow, "whizzed past the other police officers," and "disappeared." (*Id.* ¶¶ 14–15.) After consulting with another police supervisor that night, Officer Barrow used her body camera footage to seek and obtain warrants for Jacqueline's arrest for obstructing justice and impeding a pedestrian.[3] (*Id.*)

---

[3] The warrants charged Jacqueline under Virginia Code § 18.2-460 (obstructing justice) and Fredericksburg City Code § 66-17 (impeding a pedestrian). (*Id.* ¶ 17.) The Stouts' complaint does not list these specific code provisions, but unmistakably refers to these charges and their dispositions in the Fredericksburg General District Court. *See also infra* note 6. In ruling on a motion to dismiss, the Court may consider documents not attached to or expressly incorporated in

2

The next day, police officers again used their vehicles to block peaceful protests in downtown Fredericksburg. (*Id.* ¶¶ 20–23.) Marc, one of the many protesters, bicycled on a sidewalk past one of the police vehicles. (*Id.* ¶ 24.) Officer Murphy got out of his car and ordered Marc to stop and not move. (*Id.*) Marc asked if Officer Murphy had reasonable suspicion to detain him. Officer Murphy responded, "We'll get to that in a minute." (*Id.*) At this point, Jacqueline rollerbladed past Marc on the sidewalk. (*Id.* ¶ 26.) Marc told Officer Murphy that he intended to leave and that Officer Murphy should "[c]ite it or bite it." (*Id.*) Officer Murphy told Marc not to move and chased after Jacqueline on foot. (*Id.* ¶¶ 26, 27.) Officer Murphy caught Jacqueline, informed her that she had outstanding warrants, and placed her under arrest. (*Id.* ¶¶ 27–29.)

Meanwhile, Officer Worley approached Marc, who again stated that Officer Murphy had detained him. (*Id.* ¶ 31.) Officer Worley shouted, "Well, if you're being detained, get the f*** off the bike!" (*Id.*) He then told Marc to sit on the curb and asked him why he had been detained. (*Id.*) Marc got off of his bicycle, stated that he did not know why Officer Murphy had detained him, and sat on the curb. (*Id.*) Officer Worley said, "Nobody wants to hear what y'all are out here saying! Do you think people on the rooftop lounges want to hear that stuff that y'all are out here saying?!" (*Id.*) Officer Murphy returned and cited Marc for impeding traffic and bicycling in a prohibited area.[4] (*Id.* ¶ 33.)

---

the complaint if the documents are integral to the complaint and their authenticity is undisputed. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

[4] The citations charged Marc with violating Virginia's minimum speed limit statute, Virginia Code § 46.2-877, and bicycling in a prohibited area in violation of Fredericksburg City Code § 58-15. *See infra* note 5. The complaint does not cite these code sections, but the Court considers the authentic and undisputed Fredericksburg General District Court records in evaluating the defendants' motion to dismiss. *See supra* note 3.

3

On July 13, 2021, Marc was found not guilty on both charges.[5] On September 16, 2021, Jacqueline was found not guilty of obstructing justice and guilty of impeding traffic.[6]

## II. STANDARD OF REVIEW

The defendants move to dismiss the Stouts' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Rule 12(b)(6) motions test the sufficiency of a plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When deciding Rule 12(b)(6) motions, courts must accept as true the complaint's factual allegations and draw all reasonable inferences in favor of the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards*, 178 F.3d at 244). The court need not, however, accept the veracity of conclusions or threadbare recitals of the cause of action's elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive dismissal at this stage, a plaintiff must present sufficient facts to state a facially plausible claim for relief. *Iqbal*, 556 U.S. at 678. Facial plausibility means that a court, based on the facts alleged, can make the reasonable inference necessary to hold the defendant liable for the misconduct alleged. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts construe pro se complaints liberally because when

---

[5] *Commonwealth v. Marc Stout*, GT21002561-00 (Fredericksburg Gen. Dist. Ct. July 13, 2021) (not guilty under Virginia Code § 46.2-877); *Commonwealth v. Marc Stout*, GT21002563-00 (Fredericksburg Gen. Dist. Ct. July 13, 2021) (not guilty under Fredericksburg City Code § 58-15).

[6] *Commonwealth v. Jacqueline Stout*, GC21002560-00 (Fredericksburg Gen. Dist. Ct. Sept. 16, 2021) (not guilty under Virginia Code § 18.2-460); *Commonwealth v. Jacqueline Stout*, GT21002562-00 (Fredericksburg Gen. Dist. Ct. Sept. 16, 2021) (guilty under Fredericksburg City Code § 66-17).

4

plaintiffs appear pro se, courts do not expect them to frame or present legal issues with an attorney's clarity or precision. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. DISCUSSION

### A. *Jacqueline Stout's Claims*

#### 1. *Fourth Amendment*

Jacqueline sues Officers Barrow and Murphy for arresting her without probable cause and also brings malicious prosecution claims against Officer Barrow and Assistant Commonwealth Attorney Edward O'Shay.[7] Because Officer Murphy arrested Jacqueline pursuant to a facially valid warrant issued by a magistrate judge, the Court will grant the defendants' motion to dismiss Jacqueline's false arrest and malicious prosecution claims.

#### a. False Arrest

"[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. At most, such an official can be pursued through a cause of action for malicious prosecution." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). Here, Officer Murphy arrested Jacqueline pursuant to warrants Officer Barrow secured against Jaqueline for obstructing justice and impeding a pedestrian. (*See* ECF No. 3 ¶¶ 17, 29, 30, 34.) Jacqueline did not challenge the issuance of the warrants or their facial validity. Thus, these facially valid warrants insulate Officers Barrow and Murphy from liability for false arrest under the Fourth Amendment. The Court will grant the defendants' motion to dismiss Jacqueline's false arrest claim. If

---

[7] "[A]llegations that a warrantless arrest or imprisonment was not supported by probable cause advance[] a claim of false arrest or imprisonment," while "allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to . . . malicious prosecution." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181–82 (4th Cir. 1996).

Jacqueline has facts that challenge the validity of the warrant issued by the magistrate judge, Jacqueline may seek leave to file an amended complaint.

### b. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff "must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). The plaintiff must demonstrate "both but-for and proximate causation." *Id.*

Here, Jacqueline challenges Officer Barrow's decision to seek a warrant for obstructing justice.[8] This claim against Officer Barrow fails, however, because Jacqueline has not shown that Officer Barrow's actions *caused* the allegedly unlawful seizure.

Even when a police officer seeks a warrant for an individual's arrest, "subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Evans*, 703 F.3d at 647. Because Jacqueline does not allege that Officer Barrow lied to, misled, or unduly pressured the magistrate judge, the magistrate judge's issuance of the warrant breaks the causal chain. *See King v. Darden*, No. 3:17cv742, 2018 WL 3651590, at *4 (E.D. Va. Aug. 1, 2018). The Court will grant the defendants' motion to dismiss Jacqueline's malicious prosecution claim against Officer Barrow.

Jacqueline also brings a malicious prosecution claim against Assistant Commonwealth Attorney O'Shay. Jacqueline says that O'Shay committed this violation when he prosecuted her for

---

[8] To support her malicious prosecution claim, Jacqueline states that the criminal proceeding Officer Barrow initiated against her "was terminated in [her] favor." (ECF No. 3, at 18.) Because only the obstructing justice charge terminated in her favor, the Court addresses that—and not the impeding traffic—charge here.

6

obstructing justice. "[M]aintain[ing] a criminal proceeding" against an individual "fall[s] squarely under the umbrella of absolute immunity" that prosecutors enjoy when they act as advocates. *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018); (ECF No. 3, at 18). The Court will dismiss her malicious prosecution claim against O'Shay.

### 2. *First Amendment Retaliation*

Jacqueline claims that Officers Barrow and Murphy arrested her to chill her exercise of her First Amendment rights to assembly, speech, and expression. Because probable cause for the arrest existed, though, her claims fail as a matter of law. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019).

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) ("[P]robable cause requires . . . less than that evidence necessary to convict."). In conducting this inquiry, the Court considers the totality of the circumstances and "compar[es the suspect's] known conduct to the conduct proscribed by" the statute. *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016); *Smith*, 848 F.3d 248, 257–58 (4th Cir. 2017) (Agee, J., concurring). "Probable cause . . . could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). The Court "do[es] not impute factual knowledge to the officers that they did not have or that was not reasonably available to them." *Graham*, 831 F.3d at 184.

In this case, Officer Barrow placed herself in Jacqueline's path on a public road; Jacqueline rollerbladed toward her; Officer Barrow "braced herself as a 'human-X'" and shouted, "Hey, hey, hey!" at Jacqueline; Jacqueline "juked" Officer Barrow twice, "causing Officer Barrow to side-step one way, then another"; Jacqueline "performed a 'crossover'" past Officer Barrow; and, finally, Jacqueline "disappeared." (ECF No. 3 ¶¶ 12–15.) Based on Jacqueline's actions, Officer Barrow sought warrants against her for obstructing justice and impeding traffic. The following day, Officer Murphy arrested Jacqueline pursuant to the outstanding warrants. (*Id.* ¶¶ 28–29.)

Fredericksburg's impeding traffic ordinance prohibits an individual on a roadway from "[i]ntentionally block[ing] or interfer[ing] with the safe and free passage of a pedestrian . . . including unreasonably causing a pedestrian . . . to take evasive action to avoid physical contact." Fredericksburg City Code § 66-17(C)(2). When Officer Barrow sought the arrest warrants for Jacqueline, and when Officer Murphy executed the warrants, the officers knew that Jacqueline had "juked" Officer Barrow and, as a result, caused Officer Barrow to move one way and then the other.[9] Based on these facts, the officers had probable cause to believe that Jacqueline had unreasonably made Officer Barrow take evasive action. Because probable cause existed to arrest Jacqueline for the impeding traffic charge, and "[p]robable cause need only exist as to any offense that could be charged under the circumstances," *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994), Jacqueline's First Amendment retaliation claims against the officers fail as a matter of law.[10] The Court will grant the defendants' motion to dismiss these claims.

---

[9] Officer Murphy knew that the arrest warrants from Jacqueline stemmed from "Jacqueline['s] . . . dismissive rollerblade expressions towards police officers." (ECF No. 3 ¶ 30.)

[10] In limited circumstances, a plaintiff can bring a retaliatory arrest claim even where probable cause exists if she "presents objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. This exception does not apply here, though, because Jacqueline does not

### B. *Marc Stout's Claims*

#### *1. Fourth Amendment*

Marc brings Fourth Amendment claims against Officer Murphy for false arrest and malicious prosecution and Officer Worley for unreasonable detention. Because the defendants detained Marc without an objective basis for suspecting him of criminal activity, the Court will deny their motion to dismiss Marc's Fourth Amendment unreasonable seizure claims. The Court will grant the defendants' motion to dismiss his malicious prosecution claim, however, because he fails to prove causation.

#### a. Unreasonable Seizure

The Court addresses both Marc's false arrest claim against Officer Murphy[11] and his unreasonable detention claim against Officer Worley as unreasonable seizures under the Fourth Amendment. U.S. Const. amend. IV; *see Day v. Milam*, No. 1:11cv97, 2011 WL 5190809, at *4 (E.D. Va. Oct. 28, 2011). "A person is seized within the meaning of the Fourth Amendment 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Varner v. Roane*, 981 F.3d 288, 292 (4th Cir. 2020) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). A seizure does not occur during truly consensual encounters with the police, *see Florida v. Bostick*, 501 U.S. 429, 437 (1991), but a voluntary encounter can become a compelled detention if a reasonable person would not feel free to leave, *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015).

---

explain whether the police chose to not charge any similarly situated individuals—that is, any other rollerbladers who caused a police officer to move while in the street.

[11] Officer Murphy never formally arrested Marc. He did, however, tell Marc to stop and not move multiple times, and also told him that he "was being detained." (ECF No. 3 ¶¶ 24, 26.) As discussed below, his actions, therefore, amount to a seizure.

9

Here, Officers Murphy and Worley repeatedly told Marc not to leave and that he was being detained. (ECF No. 3 ¶¶ 24, 26, 31, 33.) Although Marc told Officer Worley that he "[was] attempting to *voluntarily* cooperate," the facts show that Marc tried to leave, Officer Murphy told him not to, and Marc submitted to Officer Murphy's command. (*Id.* ¶ 31 (emphasis added)); *Stover*, 808 F.3d at 995 ("[A] seizure requires both a 'show of authority' from law enforcement officers and 'submission to the assertion of authority' by the defendant." (quoting *California v. Hodari D.*, 499 U.S. 621, 626–27 (1991))). Officer Murphy thus seized Marc, and Officer Worley continued the seizure when he told Marc to get off his bike and sit on the curb.

The Court next considers the reasonableness of this seizure. A police officer may briefly detain an individual if she has "a *particularized* and objective basis for suspecting *the particular person stopped* of criminal activity." *Wingate v. Fulford*, 987 F.3d 299, 305 (4th Cir. 2021) (emphasis in original) (quoting *United States v. Massenburg*, 654 F.3d 480, 486 (4th Cir. 2011)). Here, the defendants justify Marc's seizure based on the fact that Marc rode his bicycle during the protests. But this conduct does not fall within the scope of either Virginia's minimum speed limit law or Fredericksburg's ordinance prohibiting play in certain areas, and the defendants have cited no other law that they suspected Marc of violating.

First, the impeding traffic statute provides that "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." Va. Code § 46.2-877. None of the alleged facts here support an objective, reasonable suspicion that Marc committed this crime. Though the complaint states that the Stouts "calmly and peacefully" traveled through downtown Fredericksburg, (ECF No. 3 ¶ 20), it does not state their speed, and nowhere does it imply that Marc impeded the normal and reasonable movement of traffic. To the contrary, Marc

10

bicycled on the sidewalk, "*past* one of the leading police vehicles," immediately before Officer Murphy detained him. (*Id.* ¶ 24 (emphasis added).)[12]

Second, the ordinance under which Officer Murphy cited Marc—prohibiting play in certain areas—does not apply to the use of a bicycle: "[n]o person shall use roller skates, skateboards, toys or other devices on wheels, *except bicycles*, mopeds, and motorcycles, on any downtown street where play is prohibited under this section." Fredericksburg City Code § 58-15(B) (emphasis added). Because this ordinance specifically exempts the use of bicycles, the defendants did not have an objective basis for suspecting Marc of criminal activity under this statute. The Court will deny the defendants' motion to dismiss Marc's Fourth Amendment unreasonable seizure claims.

### b. Malicious Prosecution

Similar to Jacqueline's malicious prosecution claims, Marc's malicious prosecution claim against Officer Murphy fails for lack of causation. Although Officer Murphy issued Marc's citations, "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" *Evans*, 703 F.3d at 648 (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Here, no evidence exists that Officer Murphy lied to, misled, failed to disclose exculpatory

---

[12] The Court questions whether this statute applies to Marc's use of his bicycle at all. *See, e.g.*, Va. Code § 46.2-100 (defining a "motor vehicle" as a vehicle "that is self-propelled or designed for self-propulsion" and explicitly stating that "a bicycle . . . shall be deemed not to be a motor vehicle" unless otherwise provided, and defining a "vehicle"—for the purposes of the chapter that includes the minimum speed statute—as including a bicycle "while [it is] operated on a highway").

But, regardless of whether the statute applies, the facts do not support Marc's detention. For this analysis, the Court thus assumes without deciding that the minimum speed law applies to Marc's use of his bicycle. *But see Brandau v. J. C. Penney Co.*, 646 F.2d 128, 131 (4th Cir. 1981) (noting that, "[i]n the absence of a definitive interpretation by the state's highest court on the precise point in issue," the Court would need to "seek to divine that court's probable interpretation").

evidence to, or unduly pressured the prosecutor. *See id.* The Court will grant the defendants' motion to dismiss this claim.

### 2. *First Amendment Retaliation*

Marc adequately alleges that Officers Murphy and Worley retaliated against him for engaging in protected speech and assembly under the First Amendment. A plaintiff states a First Amendment retaliation claim by alleging (1) that he engaged in protected speech; (2) that the "defendant's retaliatory action adversely affected" his protected speech; and (3) "a causal relationship exist[ed] between [the plaintiff's] speech and the defendant's retaliatory action." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000)).

Marc satisfies the first element because the First Amendment protects his peaceful protest against police violence. *See United States v. Grace*, 461 U.S. 171, 176 (1983). For the second element—proving an adverse effect—Marc need not show "that the allegedly retaliatory conduct caused [him] to cease First Amendment activity altogether." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Rather, the test is whether "the defendant[s'] allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* (quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)). Here, Officers Murphy and Worley—among a broader police presence—repeatedly shouted directives at Marc. This conduct, combined with the fact that Marc actually stopped moving (and, presumably, protesting) in response to the defendants' commands, sufficiently shows that the defendants' actions adversely affected Marc's speech.

Finally, Marc "must show that 'but for' the protected expression [the defendants] would not have taken the alleged retaliatory action." *Tobey*, 706 F.3d at 390 (quoting *Huang v. Bd. of*

*Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990)). At this stage of the litigation, the Court finds that Marc satisfies this causal requirement. Officer Murphy detained Marc in the middle of the protest and issued the citations immediately after he returned from arresting Jacqueline. And Officer Worley told Marc that "[n]obody wants to hear what y'all are out here saying!" (ECF No. 3 ¶ 31.) Based on the subject of Marc's protest, Officer Worley's statements, and the temporal proximity between Marc's speech and the officers' actions, the Court finds that Marc has stated a plausible First Amendment retaliation claim. The Court will deny the defendants' motion to dismiss this claim.

### C. Qualified Immunity

The defendants broadly claim, without any explanation or citation to supporting law, that they "are entitled to qualify for immunity." (ECF No. 10, at 1.) A government official asserting a qualified immunity defense bears the burden of proof and persuasion. *Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013). At the motion to dismiss stage, a plaintiff may survive dismissal on qualified immunity grounds by pleading "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

For the claims remaining in this case—Marc's First Amendment retaliation and Fourth Amendment unreasonable seizure claims against Officers Murphy and Worley—the Court has already found that Marc plausibly alleges that the defendants violated his constitutional rights. The Court declines to dismiss these claims at this early stage based on qualified immunity. *See Willis v. Blevins*, 966 F. Supp. 2d 646, 652 (E.D. Va. 2013) (noting that "qualified immunity is peculiarly

well-suited for resolution at the summary judgment stage" because of the fact-intensive nature of the inquiry).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendants' motion to dismiss. The Court will grant the motion to dismiss Jacqueline's claims against Officers Barrow and Murphy, and will also dismiss her claim against O'Shay. The Court will grant the defendants' motion to dismiss Marc's malicious prosecution claim against Officer Murphy, and will deny their motion to dismiss Marc's claims for unreasonable seizure under the Fourth Amendment and retaliation under the First Amendment.

Because Jacqueline does not challenge the validity of the warrant issued by the magistrate judge in her complaint, the Court will allow her to seek leave to file an amended complaint if she has facts that would challenge its validity for the purposes of her false arrest claim.

Despite the Stouts' pro se status, the Court will not allow them an opportunity to amend the other claims in their complaint. For all the reasons explained above, any such amendment would be futile. "Allowing [them] to file an [a]mended [c]omplaint where [they] so clearly cannot state a claim would be wasteful and unduly burdensome on the [d]efendants." *Shurland v. Edwards*, No. 3:19cv92, 2019 WL 3646768, at *8 (E.D. Va. Aug. 6, 2019).

The Court will issue an appropriate Order.

Let the Clerk mail a copy of this Opinion to all counsel of record and the *pro se* plaintiffs.

Date: 15 June 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge